**In re ALLIED PRINTING, INC., Debtor.**

**Nos. 04–6812–3F1, 04–6811–3F1.**

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

Dec. 9, 2005.

---

Robert Altman, Palatka, FL, Patrick C. Barthet, Miami, FL, Jeffrey R. Becker, Hiday & Ricke, P.A., Larry M. Foyle, Kass, Shuler, Solomon, Spector Foyle et al., Tampa, FL, J.M. Grant, Fort Lauderdale, FL, Mitchell E. Grodman, Boston, MA, Calvin E. Hayden, Hayden & Facciolo, P.A., Jacksonville, FL, Brad W. Hissing, Kass, Shuler, Solomon, Spector, Foyle et al., Tampa, FL, Matthew G. Krause, Eric B. Zwiebel PA, Plantation, FL, Steven N. Lippman, Rothstein Rosen-

feldt Adler, Fort Lauderdale, FL, Thomas Lobello, III, Rolfe & Lobello, Jacksonville, FL, Gary J. Lublin, Orlando, FL, John T. Rogerson, III, Volpe, Bajalia, Wickes, Rogerson & Galloway, Jacksonville, FL, John S. Schoene, John S. Schoene PA, Maitland, FL, Neal A. Sivyer, Sivyer Barlow & Watson, P.A., Tampa, FL, Richard R. Thames, Stutsman & Thames, P.A., Jacksonville, FL, Christopher S. Tindale, Bray & Singletary, P.A., Jacksonville, FL, Howard S. Toland, HAley, Sinagra, Paul & Toland, PA, Ft. Lauderdale, FL, Hildegund P. Wanders, Tampa, FL, for Creditors.

Earl M. Barker, Jr., Slott, Barker & Nussbaum, Jacksonville, FL, for Debtor.

Elena L. Escamilla, Orlando, FL, U.S. Trustee.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

JERRY A. FUNK, Bankruptcy Judge.

This case came before the Court upon Motion to Adjust Adequate Protection Payments as to Fleet Business Credit, LLC filed by Debtor and Motion for Order Compelling Debtor to Assume or Reject Master Lease Agreement filed by Fleet Business Credit, LLC. The threshold issue before the Court is whether the transaction between the parties is a lease or a security agreement. The Court conducted hearings on the matters on October 12 and October 31, 2005. At the conclusion of the hearings, the Court elected to take the matters under advisement. Upon the evidence and the arguments of the parties, the Court makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

In April, 2003 Debtor and Creo Financial Services, a Financing Program of Fleet Business Credit, LLC ("Fleet") entered into a Master Lease Agreement (the "Lease") for the use of equipment which manufactures printing plates used by Debtor in its business (the "Equipment"). The Equipment included a Lotem 800 Quantum (the "Lotum") and a Trendsetter 800 Quantum (the "Trendsetter"). The Lease requires 48 monthly payments of approximately $17,207.74. Debtor's two principals guaranteed the Lease.

Creo is the manufacturer of the Equipment. Brian Erwin ("Erwin"), a market development manager for Creo remanufactured systems whose primary responsibility is monitoring sales and marketing of used Creo equipment, testified as an expert witness on behalf of Fleet. Erwin testified that as long as the Equipment is maintained, it should last eight to ten years. The Court finds that the useful or remaining economic life of the Equipment at the time the lease was entered into was eight years. Erwin testified that as of April, 2007, the end of the lease term, the Lotem and the Trendsetter 800 will have respective values of $80,769 and $106,047.

In the Lease, Fleet disclaimed all warranties. Pursuant to the Lease, Debtor is responsible for the risk of loss of the equipment and is required to pay insurance and taxes on the Equipment. In the event Debtor defaults on the Lease, Fleet has the right to accelerate all payments due under the Lease, remove and sell the Equipment, and hold Debtor responsible for any deficiency in payments. At the end of the lease term Debtor may: 1) return the [Equipment] to [Fleet]; 2) "extend the Lease term at the then fair rental value ('Fair Rental Value') for an extension term the length of which shall be determined by agreement between [Debtor] and [Fleet] but in no case shall be less than four (4) months"; or 3) "purchase all of the [Equipment] for cash at the [Equipment]'s

then fair market value ('Fair Market Value')".[1]

In the event Debtor does not renew the Lease, it is responsible for the cost of de-installing, shipping and refurbishing the Equipment. Erwin estimated that the total cost to de-install, ship, and refurbish the Lotem and the Trendsetter will be approximately $58,000.

## CONCLUSIONS OF LAW

Whether a transaction creates a lease or a security interest is determined by the facts of each case in accordance with § 671.201(37) of the Florida Statutes which provides as follows:

(37) "Security interest" means an interest in personal property or fixtures which secures payment or performance of an obligation ... Whether a transaction creates a lease or security interest is determined by the facts of each case; however:

a) A transaction creates a security interest if the consideration the lessee is to pay the lessor for the right to possession and use of the goods is an obligation for the term of the lease not subject to termination by the lessee, and;

1. The original term of the lease is equal to or greater than the remaining economic life of the goods;

2. The lessee is bound to renew the lease for the remaining economic life of the goods or is bound to become the owner of the goods;

3. The lessee has an option to renew the lease for the remaining economic life of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement; or

4. The lessee has an option to become the owner of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement.

(b) A transaction does not create a security interest merely because it provides that:

1. The present value of the consideration the lessee is obligated to pay the lessor for the right to possession and use of the goods is substantially equal to or is greater than the fair market value of the goods at the time the lease is entered into;

2. The lessee assumes the risk of loss of the goods or agrees to pay taxes; insurance; filing, recording, or registration fees; or service or maintenance costs with respect to the goods;

3. The lessee has an option to renew the lease or to become the owner of the goods;

4. The lessee has an option to renew the lease for a fixed rent that is equal to or greater than the reasonably predictable fair market rent for the use of the goods for the term of the renewal at the time the option is to be performed; or

5. The lessee has an option to become the owner of the goods for a fixed price that is equal to or greater than the reasonably predictable fair market value of the goods at the time the option is to be performed.

(c) For purposes of this subsection:

---

1. The Lease provides that Fair Market Value and Fair Rental Value mean "an amount which would obtain in a transaction between an informed and willing buyer/lessee (other than a dealer) and an informed and willing seller/lessor (assuming for this purpose that the [Equipment] shall have been maintained in accordance with this Lease and taking into consideration the in-place value of the [Equipment] to Lessee) and will be determined by agreement between [Fleet] and [Debtor]."

1. Additional consideration is not nominal if, when the option to renew the lease is granted to the lessee, the rent is stated to be the fair market rent for the use of the goods for the term of the renewal determined at the time the option is to be performed or if, when the option to become the owner of the goods is granted to the lessee, the price is stated to be the fair market value of the goods determined at the time the option is to be performed. Additional consideration is nominal if it is less than the lessee's reasonably predictable cost of performing under the lease agreement if the option is not exercised.

2. "Reasonably predictable" and "remaining economic life of the goods" are to be determined with reference to the facts and circumstances at the time the transaction is entered into.

■ Pursuant to the statute, a transaction creates a security interest if the lessee's obligation to make the rental payments is not terminable by the lessee during the term of the lease and any one of the factors set forth in § 671.201(37)(a)(1)-(4) applies. There is no dispute that the consideration Debtor is (was) to pay to Fleet for the right to possess and use the Equipment is an obligation for the term of the Lease which is not subject to termination by Debtor. The Court concludes that none of the remaining four factors are present in the instant case. First, the original term of the Lease, four years, is not equal to or greater than eight years, the remaining economic life of the goods at the time the Lease was entered into. Second, Debtor is not contractually bound to renew the lease for the remaining economic life of

the Equipment or to purchase the Equipment.[2] Third, Debtor may only renew the lease if it pays fair rental value. As 671.201(37)(c) specifically provides that "additional consideration is not nominal if, when the option to renew the lease is granted to the lessee, the rent is stated to be the fair market rent for the use of the goods for the term of the renewal determined at the time the option is to be performed", Debtor does not have the option to renew the lease for no additional or nominal additional consideration. Finally, Debtor may only purchase the equipment if it pays fair market value. As 671.201(37)(c) also specifically provides that "additional consideration is not nominal if, when the option to become the owner of the goods is granted to the lessee, the price is stated to be the fair market value of the goods determined at the time the option is to be performed", Debtor does not have the option to purchase the equipment for no additional or nominal additional consideration.

■ A determination that a transaction does not create a security interest based upon the factors set forth in 671.201(37)(a)(1–4) is not dispositive of whether a security interest was created. A court is required to examine all of the facts and circumstances relevant to the transaction. *In re Howell*, 161 B.R. 285 (Bankr.N.D.Fla.1993). Although a court is free to consider the factors set forth in 671.201(37)(b) to guide its determination, no single factor is determinative. A leading treatise has suggested that only the first factor in 671.201(37)(b) is relevant to the determination. *See 4 White & Summers, Uniform Commercial Code § 30–3 at 7* (West 2005) (noting that "[w]e suspect

---

**2.** Debtor argues that it is bound to renew the lease as a practical matter for the remaining economic life of the Equipment. It is clear, however, that the statute does not contemplate being bound in a practical or de facto sense, but rather contractually. *See In re Pillowtex, Inc.*, 349 F.3d 711, 719 (3d Cir. 2003).

the drafters included (a)-(e) not just because they believed those factors do not carry the day alone, but because they believed those factors not relevant-singly or together. Except perhaps for (a), we regard the factors not only as 'not enough', but as generally not relevant in determining whether a document is a lease or a security agreement.") Whatever factors a court considers, the fundamental inquiry is whether the purported lessor retained a reversionary interest in the property. "If there is a meaningful reversionary interest-either an up-side right or a downside risk—the parties have signed a lease, not a security agreement. If there is no reversionary interest, the parties have signed a security agreement, not a lease." *Id.* at 8.

Debtor contends that other than the purchase buy out provision at the end of the Lease, the transaction is in every respect a lending transaction. The Official Comment to the Uniform Commercial Code provides that "[p]rior to the amendment, Section 1–201(37) provided that whether a lease was intended as security (*i.e.* a security interest disguised as a lease) was to be determined from the facts of each case ... [r]eference to the intent of the parties has led to unfortunate results. In discovering intent, courts have relied upon factors[3] that were thought to be more consistent with sales or loans rather than leases. Most of these criteria, however, are as applicable to true leases as to security interests. Examples include

the typical net lease provisions, a purported lessor's lack of storage facilities or its character as a financing party rather than a dealer in goods. Accordingly, amended Section 1–201(37) deletes all references to the parties' intent." Notwithstanding the fact that: 1) the principals of Allied were required to sign a guaranty; 2) Fleet disclaimed all warranties; 3) Fleet has the right in the event of default to accelerate all payments due under the Lease, remove and sell the Equipment, and hold Debtor responsible for any deficiency in payments; 4) Allied assumed the risk of loss of the goods; and 5) Allied is responsible for insuring and paying taxes on the Equipment, the Court concludes that Fleet retained a meaningful reversionary interest in the Equipment and that the transaction at issue is therefore a lease.

## CONCLUSION

Because Fleet Business Credit, LLC retained a meaningful reversionary interest in the equipment which is the subject of the transaction between it and Debtor, the transaction is a lease. The Court will enter a separate order denying Debtor's Motion to Adjust Adequate Protection Payments as to Fleet Business Credit, LLC and a separate order granting Fleet Business Credit, LLC's Motion for Order Compelling Debtor to Assume or Reject Master Lease Agreement.

---

3. The "incidents of ownership" factors developed by courts under Old UCC 1–201(37) are set forth in *FF & E and the True Lease Question; Article 2A and Accompanying Amendments to UCC Sectin 1–201(37)*, 7 Am. Bankr. Inst. L.Rev. 517, 548 (1999) and include among other things that: 1) the lease requires an indemnity or guaranty issued by a third party; 2) the lessee is responsible for insuring the leased property; 3) the lessee bears the loss of risk as to the leased property; 4) the lessee is responsible for paying all taxes as to the leased property; the lease contains a provision disclaiming warranties of fitness and /or merchantability; 5) the lease contains default provisions such as acceleration of rent, or other mortgage remedies; and 6) the lease contains default provisions which provide that, upon sale of the leased property, the lessee is liable for any deficiency in total rent in excess of the sales proceeds, or which entitle the lessee to receive any surplus proceeds over the rental value.

*ORDER GRANTING FLEET BUSINESS CREDIT, LLC'S MOTION FOR ORDER COMPELLING DEBTOR TO ASSUME OR REJECT MASTER LEASE AGREEMENT*

This case came before the Court upon Motion for Order Compelling Debtor to Assume or Reject Master Lease Agreement filed by Fleet Business Credit, LLC. Upon Findings of Fact and Conclusions of Law separately entered, it is

**ORDERED:**

1. Fleet Business Credit, LLC's Motion for Order Compelling Debtor to Assume or Reject Master Lease Agreement is granted.

2. Debtor shall assume or reject the Master Lease Agreement before confirmation.

*ORDER DENYING DEBTOR'S MOTION TO ADJUST ADEQUATE PROTECTION PAYMENTS AS TO FLEET BUSINESS CREDIT, LLC*

This case came before the Court upon Motion to Adjust Adequate Protection Payments as to Fleet Business Credit, LLC filed by Debtor. Upon Findings of Fact and Conclusions of Law separately entered, it is

**ORDERED:**

Debtor's Motion to Adjust Adequate Protection Payments as to Fleet Business Credit, LLC is denied.